UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN PANKEY,

                                            Plaintiff,

                                                                          9:08-CV-1298
v.                                                                        (NAM/GHL)

WILLIAM BROWN, Superintendent,
Eastern Correctional Facility, et al.,

                                            Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

STEVEN PANKEY
Plaintiff *pro se*
Uplifting Men, Inc.
831 Monroe Street
Brooklyn, New York 11221


HON. ANDREW M. CUOMO                             MEGAN M. BROWN, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff alleges that being sent to clean an unsanitary and unsafe area within the correctional

institute was a violation of his Eighth and Fourteenth Amendment rights.  (Dkt. No. 1 at 5.)

Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 13.)  For the reasons that follow, I recommend that Defendants' motion be granted.

## I.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[1] or (2) a challenge to the legal cognizability of the claim.[2]

---

[1]   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]   *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under

2

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[3] The main purpose of this rule is to "facilitate a proper decision on the merits."[4] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

---

Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[3]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[4]      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[5]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[6] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[7] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

---

unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[6]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[7]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

4

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[8]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[9]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[10]  Of course, an opportunity to

---

[8]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[9]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[10]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

amend is not required where the plaintiff has already amended his complaint.[11]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[12]

However, while this special leniency may somewhat loosen the procedural rules

governing the form of pleadings (as the Second Circuit has observed),[13] it does not completely

---

[11]      *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[12]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted];  *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the
Constitution or laws of the United States, but only negligence–were substantive and not formal in
nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.
Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his
complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the
defendants were protected from liability by Eleventh Amendment immunity–was substantive and
not formal in nature, rendering repleading futile).

[13]      *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5
(2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally]
entails, at the very least, a permissive application of the rules governing the form of pleadings.")
[internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d
Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of

relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and

12.[14]   Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the

requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights

plaintiffs must follow.[15]   Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal

rules of pleading are not absolutely suspended."[16]

## II.    PLAINTIFF'S ALLEGATIONS

In his Complaint, Plaintiff alleges that on December 1and 4, 2006, he was told by

Defendant Officer Krentz that Defendant "7-3 Sgt." had assigned Plaintiff to clean an area of

---

important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[14]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[15]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[16]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

7

Eastern Correctional Facility, where he then was housed.  (Dkt. No. 1 at 4[17].)  According to the

Complaint, this area was "dangerous and condemned and no one was supposed to be in this area,

and it was full of asbestos, dead pigeons, dead pigeon carcusses (sic), lead paint, and pigeon

fecies (sic)."  *Id.* at 5.  He was given "a broom, some garbage bags, and a regular dust mask."  *Id.*

at 7.  He complained to Defendant Officer Krentz, who told him to file a grievance.  In a

memorandum filed in opposition to Defendants' motion to dismiss, Plaintiff alleges that, in

connection with the grievance that he did file, Defendant Superintendent Brown "denied the

claim and the actions requested."  (Dkt. No. 20 at 6.)

## III.   ANALYSIS

### A.   Eighth Amendment

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual"

punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for

criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*,

429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary

and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that

mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth

Amendment imposes on jail officials the duty to "provide humane conditions of confinement"

for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison

officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and

must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer*, 511 U.S. at 832

---

[17]     Page numbers refer to the page numbers assigned by the Court's electronic filing system.

(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To satisfy the subjective component, the defendant's behavior must be "wanton." What is considered "wanton" must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is raised." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Where a prisoner claims that a defendant provided inadequate conditions of confinement, he must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

1.   Deliberate Indifference

The Court will address first the subjective component of Plaintiff's Eighth Amendment claim, *i.e.*, that the behavior of Defendants Krentz and the "7-3 Sgt." was wanton and that they were acting with deliberate indifference. Plaintiff's claims in this regard fail to meet the *Iqbal*

and *Twombly* test of facial plausibility, that is, he has not set forth sufficient factual context that would allow this Court to draw a reasonable inference that Defendants Krentz and the "7-3 Sgt." were deliberately indifferent.

Simply stated, Plaintiff has alleged no facts which plausibly suggest that Defendants Krentz and the "7-3 Sgt.", on or before December 4, 2006, knew of the allegedly dangerous conditions that were present in the area that he was assigned to clean.  As Plaintiff acknowledges, he was in the area only on December 1 and 4, 2006.  It was the next day, December 5, 2006, when Officer Anderson, presumably in response to Plaintiff's complaints, became involved.  The Complaint alleges:

> On December 5, 2006, the steady officer came back to work with the lawns and roads crew, an Officer Anderson of Eastern Correctional Facility, he took me back to this area of the main building of [E]astern where [I] had been working the days before, I expressed my concerns to [O]fficer [A]nderson and he immediately began to search the area, in the back of this auditorium he found matted pieces of [asbestos] lying on the floor, he picked it up and put it into a bag and took it to the [sergeants'] office and requested to speak to a union rep[resentative] along with the fire and safety officer, a [M]r. [J]im [J]ohnson of [E]astern [C]orrectional [F]acility, he came to the area where we were at and the question was asked if it was safe for us to be in that area, he implied that he did not know at that time, so [O]fficer [A]nderson told me to get the equipment that [I] had brought up there and leave. [S]o [I] did what [I] was told.
>
> The next day which was [D]ecember 6, 2006, [O]fficer [A]nderson had informed me that the area had in fact been condemned by an outside agency, he also had informed me that the information was and is public knowledge, and showed me some information which he had gotten off the internet based upon this area that we had been in he said that the facility called this agency some time before we entered this area and that they had in fact condemned the area and warned of the dangers of entering it.

(Dkt. No. 1 at 7-8.)

10

Plaintiff's Complaint (Dkt. No. 1) and his memorandum in opposition to this motion

(Dkt. No. 20) are silent with respect to Defendant "7-3 Sgt." having any awareness whatsoever of

the conditions that existed in the area.  With respect to Defendant Krentz, no facts are alleged

plausibly suggesting that on or before December 4, 2006, he conducted a search of the area, as

did Officer Anderson.  And even if he had, no facts are alleged plausibly suggesting that his

conclusion would have been any different than that of the fire and safety officer, Mr. Jim

Johnson, who when "asked if it was safe for us in that area, he implied that he did not know at

that time."  (Dkt. No. 1 at 8.)  It was only the next day, December 6, 2006, that Mr. Anderson

allegedly learned that the area had been "condemned."  *Id*.  Although this information, allegedly

according to Mr. Anderson, was "public knowledge" (*Id*.), he had gotten this information "off the

internet."  *Id*.  Plaintiff asserts no facts plausibly suggesting that Defendants Krentz and the "7-3

Sgt." had conducted a similar internet search.

In short, there are no facts plausibly suggesting that Defendants Krentz and the "7-3 Sgt."

were deliberately indifferent to the allegedly dangerous conditions in which Plaintiff was placed.

Therefore it is recommended that Plaintiff's Eighth Amendment claim be dismissed.  However,

since Plaintiff is proceeding *pro se*, it is recommended that the dismissal be without prejudice to

Plaintiff filing an amended complaint.

2.    Sufficiently Serious Condition

As noted above, "punishment" within the Eighth Amendment includes deprivations

suffered during imprisonment.  The question becomes, therefore, whether the deprivations

alleged by Plaintiff from being in the area on December 1 and 4, 2006, have factual support to

plausibly suggest that they were "sufficiently serious."  The Complaint alleges that an

11

independent organization "had in fact condemned the area and warned of the dangers of entering it." (Dkt. No. 1 at 8.)  In addition , the Inmate Grievance Resolution Committee apparently agreed with Plaintiff's description of the conditions that he encountered in the area.  (Dkt. No. 1-2 at 2-3.)  The Court finds that these alleged facts plausibly suggest that the deprivations allegedly suffered by Plaintiff were "sufficiently serious," and therefore it is recommended that the motion to dismiss should not be granted based upon the Eighth Amendment's objective component.

     **B.**    **Fourteenth Amendment**

Plaintiff argues that being forced to clean a condemned area that contained lead paint, asbestos, dead pigeons, and pigeon feces, violated his Fourteenth Amendment rights.  (Dkt. No. 1 at 5.)  Defendants argue that Plaintiff cannot state a Fourteenth Amendment claim because his claim is appropriately pled only under the Eighth Amendment.  (Dkt. No. 13-2 at 5.)  For this proposition, Defendants cite *Whitley v. Albers*, 475 U.S. 312 (1986), and urge the court to follow the holding in *Whitley* and dismiss the Fourteenth Amendment claim.  *Id*.

In *Whitley*, the Court held that liability under the Eighth and Fourteenth Amendments was coextensive with respect to a prisoner who was shot during an attempt by prison guards to free a colleague who had been taken hostage by an inmate.  *Id*. at 315-316.  In these circumstances, the Court stated, "the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause."  *Id*. at 327.  The Court made clear that the holding was only applied in the context of forceful prison security measures, where deliberate use of force is challenged.  *Id*.

In *Stubbs v. Dudley*, the Second Circuit refused to extend *Whitley*, and stated that "[a]n

12

inmate who is injured as a result of a prison official's deliberate indifference to his safety may maintain a damage action for deprivation of his civil rights under the Eighth and Fourteenth Amendments." *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988).  Other courts have also allowed prisoners to bring simultaneous Eighth and Fourteenth Amendment claims and have disagreed that these two claims are always coextensive.  *See Freitas v. Stone*, 818 F. Supp. 1333, 1339 (D. Haw. 1993) (refused to extend *Whitley*, allowed prisoner to bring Eighth and Fourteenth Amendment claims and disagreed that these two types of claims are always coextensive); *see Leslie v. Doyle*, 125 F.3d 1132, 1134 (7th. Cir 1997) (allowed prisoner to bring Eighth and Fourteenth Amendment claims regarding a single event).

Here, Plaintiff complains about exposure to an unsanitary and unsafe area, not the use of deliberate force in a prison security context.  (Dkt. No. 1 at 5.)  Therefore, *Whitley* is not applicable, and the Court will address Plaintiff's Fourteenth Amendment claim.

"Substantive due process [under the Fourteenth Amendment] protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in the constitutional sense, ... but not against constitutional action that is incorrect or ill-advised."  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)(internal quotation marks and citations omitted).  Here, as noted above at part "A.1," Plaintiff has alleged no facts which plausibly suggest that Defendants Krentz and the "7-3 Sgt.," on or before December 4, 2006, knew of the allegedly dangerous conditions.  Therefore their conduct at the very worst was "incorrect or ill-advised."  As stated by the Supreme Court in *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998): "negligently inflicted harm is categorically beneath the threshold of constitutional due process."  Therefore it is recommended that Plaintiff's Fourteenth Amendment claim be dismissed, without prejudice to

Plaintiff filing an amended complaint.

    **C.    Sovereign Immunity**

    Defendants argue that "to the extent plaintiff has sued [the Department of Correctional Services] under section 1983, DOCS should be dismissed from the case."  (Dkt. No. 13-2 at 9.) A review of the Complaint indicates to the Court that DOCS, although referred to in the caption, is not a named defendant.  (See Dkt. No. 1 ¶ 3.)  However, in his memorandum in opposition, Plaintiff disputes Defendants' argument (Dkt. No. 20 at 7-8) and therefore the Court will address the issue.

    The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

    Although § 1983 authorizes suits against a person, a State is not a "person" within the meaning of § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989).  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations

of civil liberties." *Id*. at 66.  An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (citing *Marbley v. Bane*, 57 F.3d 224, 233 (2d Cir. 1995)).

Here, the New York State Department of Correctional Services is an arm of the state and therefore immune.  Accordingly, the Court recommends that the claims against the Department of Correctional Services be dismissed without leave to amend.

### D.    Superintendent Brown's Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[18]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[19]  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[20]  In other words, supervisory officials may

---

[18]    *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[19]    *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[20]    *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

not be held liable merely because they held a position of authority.[21]

In their moving papers, Defendants argue that Plaintiff has failed to allege any personal involvement of Defendant Superintendent Brown.  (Dkt. No. 13-2 at 5-8.)  Plaintiff's Complaint (Dkt. No. 1) is indeed silent in this respect.  However, in his opposition memorandum Plaintiff refers to Exhibit A attached to the Complaint, which is his "Inmate Grievance Complaint" (Dkt. No. 1-2 at 2), and he states:

> Where Grievance Committee agrees with all Plaintiff's requested actions, after all grievance proceedings are done it goes to the Superintendent for his approval.  He specifically denied the claim and actions requested, this shows that the Superintendent did in fact deprive Plaintiff of the requested actions in the grievance.

(Dkt. No. 20 at 6.)  The Court will assume, *arguendo*, that, if given leave to amend his Complaint, Plaintiff would include these allegations.  Plaintiff's assertion that the IGRC's decision of "agree with all Grievant's requested actions" (Dkt. No. 1-2 at 3) would have been transmitted to Superintendent Brown appears to be accurate.  *Linares v. Albrith*, No. 9:03-CV-1408, 2009 WL 799969, at *3 n. 6 (N.D.N.Y. March 25, 2009).  All of this plausibly suggests that Superintendent Brown was personally involved with Plaintiff's grievance.

However, the relevant inquiry is whether Superintendent Brown was personally involved in an alleged violation of Plaintiff's constitutional rights.  The alleged violation occurred on December 1 and 4, 2006; Superintendent Brown's personal involvement with Plaintiff's grievance occurred, if at all, sometime after December 29, 2006.  Therefore, Plaintiff has not alleged facts (even including the allegations in his opposition memorandum) that plausibly suggest that Defendant Superintendent Brown was personally involved in the alleged

---

[21]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

constitutional violation.  Thus it is recommended that the Complaint be dismissed against Defendant Brown.

###### E.    Qualified Immunity

Defendants seek dismissal based upon the doctrine of qualified immunity. (Dkt. No. 13-2 at 9-11.)  This doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)).  A determination of this issue involves deciding whether the facts that a plaintiff has alleged, or shown, make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Pearson*, 129 S.Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Higazy v. Templeton*, 505 F.3d 161, 169 n. 8 (2d Cir. 2007).  The following three factors are considered when determining whether a particular right was clearly established at the time a defendant acted:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S.

962 (1992).[22]  "As the third part of the test provides, even where the law is 'clearly established'

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful."  *Higazy v. Templeton*, 505 F.3d 161, 169-70

(2d Cir. 2007) [citations omitted].[23]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[24]  As the Supreme Court has explained:

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law
> ... Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

---

[22]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[23]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[24]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

*Malley*, 475 U.S. at 341.[25]

Here, as of December 2006, Plaintiff's constitutional right to be provided with "humane conditions of confinement" (*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) was defined with reasonable specificity and the law of the Supreme Court supported its existence.  However, for the reasons set forth in part "A.1" and part "D" above, Plaintiff has alleged no facts, in his Complaint or in his opposition memorandum, plausibly suggesting that it was not objectively reasonable for Defendants to believe that their acts were unlawful.  Therefore, although recognizing that a qualified immunity defense "faces a formidable hurdle when advanced on [a Rule 12(b)(6)] motion" (*McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)), it is recommended that the Complaint be dismissed pursuant to this doctrine, but it is further recommended that the dismissal be without prejudice to Plaintiff filing an amended complaint.

**ACCORDINGLY**, its

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 13) be **GRANTED** without prejudice to Plaintiff filing an amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

---

[25]     *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  September 23, 2009
            Syracuse, New York

George H. Lowe
United States Magistrate Judge