**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEVEN PANKEY**

                               **Plaintiff,**

                                                        **9:08-CV-1298**
  vs.                                                      **(NAM/GHL)**

**DEPARTMENT OF CORRECTIONAL SERVICES,**
**SUPERINTENDENT BROWN, OFFICER KRENTZ,**
**7-3 SERGEANT FOR DECEMBER 1, 2006,**

                               **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

Steven Pankey
18-18 Hazen Street
3rd Floor B-22
East Elmhurst, New York 11370
Plaintiff *pro se*

Eric T. Schneiderman                           Megan M. Brown, Esq.
Attorney General for the State of New York     Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**Norman A. Mordue, Chief U. S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

     In this *pro se* action under 42 U.S.C. § 1983, plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), claims that defendants violated his rights under the Eighth, Fourteenth and First Amendment. Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 48). Plaintiff opposes the motion. (Dkt. No. 60).

## BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the history in the case is assumed based on this Court's previous Order, *see Pankey v. Brown*, et al., 08-CV-1298, Dkt. No. 31 (Oct. 16, 2009) (Order) adopting Magistrate Judge George H. Lowe's Report-Recommendation dismissing plaintiff's action without prejudice to the service and filing of an amended complaint. *See Pankey v. Brown*, et al., 08-CV-1298, Dkt. No. 30 (Sept. 23, 2009) (Report-Recommendation).[1]

## THE AMENDED COMPLAINT[2]

On February 16, 2010, plaintiff filed an amended complaint alleging as follows (Dkt. No. 46.): From December 2006 until August 2007, plaintiff was an inmate at Eastern Correctional Facility. On December 1, 2006, defendants Corrections Officer Krentz ("Krentz") and the "7-3 Sergeant" ("7-3 Sgt.") at the front gate asked plaintiff (and other prisoners) to clean an auditorium located in the main building. Upon arriving at the auditorium, plaintiff noticed that the area was, "covered with dead pigeons, pigeon feces and lead paint peeling off the walls". Plaintiff also observed material he describes as "asbestos" stuffed into plastic bags hidden in the back of the auditorium. Plaintiff told Krentz that he didn't think it was safe to be in the area without safety gear and equipment. Krentz told plaintiff to wait while he relayed the complaint to the sergeant.

---

[1] On February 13, 2009, defendants moved to dismiss plaintiff's original complaint. (Dkt. No. 13.) Magistrate Judge Lowe recommended that the motion be granted with leave to amend concluding that: (1) the complaint did not state an Eighth Amendment claim because plaintiff did not allege any facts suggesting that defendants were deliberately indifferent to the alleged dangerous conditions; (2) the complaint did not state a Fourteenth Amendment substantive due process claim; (3) defendant New York State Department of Correctional Services is entitled to sovereign immunity; and (4) the complaint did not allege any facts to sufficiently show Superintendent Brown's personal involvement. For these reasons, Magistrate Judge Lowe also recommended that the complaint be dismissed pursuant to the doctrine of qualified immunity. (Dkt. No. 30).

[2] In reviewing the amended complaint, the Court accepts as true all factual allegations and draws all reasonable inferences in plaintiff's favor for purposes of the pending motion. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

When Krentz returned, he told plaintiff, "if [he] didn't clean the area, [he] would be given an infraction for violating prison rules". Plaintiff claims that he was forced to clean the area because if he was given an infraction, "he would be removed from the Chemical Dependency Program that he was enrolled in at the prison and transferred out of the prison facility". Plaintiff was told he could file a grievance after he cleaned the area. On December 4, 2006, plaintiff was again "forced and threatened" to clean the aforementioned area.

On December 5, 2006, Officer Anderson, the regular officer in charge of the lawns and road crews, took plaintiff to the subject area. Plaintiff explained the situation to Officer Anderson and the Officer inspected the area.[3] Officer Anderson deemed the area unsafe and called Jim Johnson, the Prison Fire and Safety Officer.[4] Johnson "suspected" that the material in the plastic bags was asbestos. On the same day, prison officials took plaintiff off the assignment and plaintiff filed a grievance with the facility. Plaintiff claims that the area was "cordoned off and individuals were prevented from going in [] because of its dangerous nature".[5] Plaintiff claims that "an outside company" cleaned the area and "deemed the area unsafe".

One week later, plaintiff was treated by the medical unit. Plaintiff claims that the delay was due to the fact that he filed a grievance. X-rays of plaintiff's chest allegedly revealed "nodules" on plaintiff's lung walls and "other problems".

In the amended complaint, plaintiff asserts causes of action for violations of his Eighth, Fourteenth and First Amendment rights. Plaintiff claims that his right to be free from cruel and

---

[3] Officer Anderson is not a defendant herein.

[4] Jim Johnson is not a defendant herein.

[5] Plaintiff does not provide any information regarding when the area was cordoned off or whether it was cordoned off before or after he was forced to clean it.

3

unusual punishment and his substantive due process rights were violated. Specifically, plaintiff claims that defendants were deliberately indifferent to his health and that defendants had actual notice and constructive notice of the dangerous conditions at the prison. Plaintiff also alleges that defendants violated his First Amendment rights.

Defendants move to dismiss the amended complaint. Defendants argue that the amended complaint fails to state a claim because plaintiff fails to allege: (1) facts to indicate that defendants Krentz and 7-3 Sgt. were aware of any dangerous condition or that they had constructive notice of said condition; (2) that defendants Krentz and 7-3 Sgt. knew of the allegedly dangerous condition prior to December 1, 2006 to prove a Fourteenth Amendment violation; (3) any facts "sufficient to give rise to a colorable suspicion of retaliation," to support the First Amendment claim; and (4) allege any personal involvement of defendant Brown in any challenged action. Finally, defendants argue that they are entitled to qualified immunity. (Dkt. No. 48).

**III.   DISCUSSION**

**A.   Standard on Motion to Dismiss**

Defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI Commc'n, Inc.*, 493 F.3d at 98. The issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

4

*King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). A complaint should be "especially liberally construed when it is submitted *pro se* and alleges civil rights violations." *See Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

**B.     Eighth Amendment**

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's knowledge of a risk may be proven by "inference from circumstantial evidence." *Id.* at 842. To establish an Eighth Amendment violation, plaintiff must establish that: (1) he was subjected to conditions posing a substantial risk of serious harm, and (2) the prison officials knew of and disregarded the risk by failing to take reasonable measure to abate the harm. *Id*. "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost

certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). A plaintiff may establish that an official acted with deliberate indifference if he had, "actual or constructive notice of a specific risk to an inmate's safety and fails to take steps to protect the inmate from injury". *Van Gorder v. Workman*, 2006 WL 3149360, at *2 (W.D.N.Y. 2006) (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)). The Eighth Amendment applies to claims of deliberate indifference involving exposure to asbestos. *See LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).

In the prior Report-Recommendation, Magistrate Judge Lowe recommended dismissing the Eighth Amendment claims, with leave to replead, and reasoned:

> . . . [p]laintiff has alleged no facts which plausibly suggest that defendants Krentz and the "7-3 Sgt", on or before December 4, 2006, knew of the allegedly dangerous conditions that were present in the area that he was assigned to clean. As plaintiff acknowledges, he was in the area only on December 1 and 4 2006. It was the next day, December 5, 2006, when Officer Anderson, presumably in response to plaintiff's complaints, became involved".

"[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Savitsky v. Mazzella*, 210 F. App'x 71, 73 (2d Cir. ) (quoting *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998)). Therefore, in determining whether dismissal is warranted, the Court relies upon the allegations in the amended complaint.

### 1. Subjective Prong

Defendants argue that the amended complaint does not plausibly suggest a constitutional violation because plaintiff has not presented any facts to indicate that defendants were aware of any dangerous conditions or that they drew the conclusion that the area was dangerous. Indeed,

6

defendants claim that following allegations in the amended complaint support their argument: (1) plaintiff was in the area only on December 1 and 4, 2006; (2) Officer Anderson did not inspect the area until December 5, 2006; and (3) while the Prison Fire and Safety Officer, Jim Johnson, was notified about the material, Mr. Johnson indicated he did not know if the material was asbestos.

In his amended complaint, plaintiff asserts that on December 1, 2006, both Krentz and the 7-3 Sgt. had actual notice of the dangerous conditions because plaintiff verbally complained to Krentz about cleaning the area without safety equipment. Moreover, plaintiff asserts that Krentz and the 7-3 Sgt. had constructive notice that dangerous conditions existed by virtue of the fact that the conditions existed for several months and that the area had been "cordoned off because of its danger to individual's health and safety". Construing the complaint liberally and accepting all allegations in plaintiff's complaint as true, the Court finds that plaintiff has sufficiently alleged facts to survive a motion to dismiss. *See Crawford v. Artuz*, 1999 WL 4351555, at *5 (S.D.N.Y. 1999) (the plaintiffs adequately alleged that the defendants were aware of asbestos in areas of the prison and had the authority to remedy the situation, but did nothing for an extended period of time).

   **2.    Objective Prong**

In the prior Report-Recommendation adopted by this Court, Magistrate Judge Lowe concluded that plaintiff's original complaint satisfied the objective component of the Eighth Amendment. The Magistrate Judge noted that plaintiff adequately plead that his alleged deprivations were sufficiently serious. The amended complaint incorporates the same allegations, i.e., "an outside company had done testing on the area . . . deemed the area to be unsafe for

7

anyone to enter it and had condemned it". Amended Complaint at ¶ 30. Moreover, plaintiff alleges that he suffered damage to his lungs and health due to exposure to the dangerous conditions. Indeed, the Supreme Court has held that the Eighth Amendment protects inmates from conditions that "are likely to cause serious future harm even where no present harm is established". *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also Jones v. Artuz*, 2006 WL 2390267, at *4 (S.D.N.Y. 2006) ("the Supreme Court has recognized situations in which exposure to toxic substances presents so high a risk that the Eighth 'Amendment's protection would be available even though the effects of exposure might not be manifested for some time'"). As such, defendants' motion to dismiss plaintiff's Eighth Amendment cause of action is DENIED.

**C.     Fourteenth Amendment**

Defendants move for dismissal of plaintiff's Fourteenth Amendment claims. The amended complaint provides:

> Plaintiff claims violations of the Fourteenth Amendment based on the defendants' deliberate indifference to plaintiff's safety resulting in deprivation of plaintiff's civil rights.
>
> . . . they insisted that plaintiff clean [the area] which demonstrated deliberate indifference to plaintiff's safety and constituted deprivation of plaintiff's civil rights under the Fourteenth Amendment.

Amended Complaint at ¶ 43, 46.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Madison v. Mazzuca*, 2004 WL 3037730, at *10 -11 (S.D.N.Y. 2004) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)); *see also Howard v. Goord*, 2001 WL 739244, at *2 (E.D.N.Y. 2001)

8

(the plaintiff characterized his claim against the defendants as a violation of his Fourteenth Amendment substantive due process rights, however it was clear that his *pro se* complaint sought to vindicate his Eighth Amendment rights to be free from the "unnecessary and wanton infliction of pain"); *see also McKenna v. Wright*, 2004 WL 102752, at *8 (S.D.N.Y. 2004) (the court dismissed the substantive due process claims as to all defendants as duplicative).

Here, plaintiff's deliberate indifference/cruel and unusual claim is based upon the same set of facts as plaintiff's substantive due process claim asserted under the Fourteenth Amendment. The Court will, "construe the complaint to raise the strongest argument it suggest[s], namely, that defendants violated the plaintiff's Eighth Amendment rights". *See Howard*, 2001 WL 739244, at *2. On this basis, defendants' motion to dismiss plaintiff's Fourteenth Amendment claims is GRANTED.

**D.     Personal Involvement**

Defendants argue that plaintiff fails to allege that Superintendent Brown was personally involved in any violation of his constitutional rights.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior ) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325

9

(1981). Rather, supervisory personnel may be considered "personally involved" only if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 973 (2d Cir. 1995).

In the prior Report-Recommendation, Magistrate Judge Lowe noted that plaintiff's complaint lacked any allegations against Brown. However, the Magistrate Judge acknowledged that plaintiff's opposition to the motion to dismiss contained arguments regarding Brown's involvement. Specifically, plaintiff argued that the Superintendent approved all grievance proceedings and therefore, since the Grievance Committee denied his requests, Superintendent Brown clearly was personally involved in the deprivation of plaintiff's rights. The Magistrate Judge addressed these arguments and stated that plaintiff, "plausibly suggests that Superintendent Brown was personally involved with plaintiff's grievance". The Magistrate Judge concluded:

> The Court will assume, *arguendo*, that if given leave to amend his complaint, plaintiff would include these allegations.
>
> The alleged violation occurred on December 1 and 4, 2006; Superintendent Brown's personal involvement with plaintiff's grievance occurred, if at all, sometime after December 29, 2006. Therefore, plaintiff has not alleged facts that plausibly suggest that defendant Superintendent Brown was personally involved in the alleged constitutional violation.

Report-Recommendation at p. 16 (Dkt. No. 30).

Plaintiff did not heed the Magistrate's suggestions. The amended complaint, like the

10

original complaint, contains no allegations against Superintendent Brown.  Indeed, Brown is only mentioned in the caption.  Throughout the amended complaint, plaintiff refers to "prison officials" but, other than Officer Krentz and the 7-3 Sgt., plaintiff does not identify any prison officials in the body of the amended complaint.  Once again, plaintiff's allegations against Brown are presented only in plaintiff's opposition to defendants' motion to dismiss.  As the Court previously instructed plaintiff to assert any allegations against Brown in the amended complaint, and plaintiff failed to do so for a second time, defendants' motion to dismiss plaintiff's claims against Brown is GRANTED for failure to state a claim.

**E.     First Amendment/Retaliation**

In the amended complaint, plaintiff alleges that his First Amendment rights were violated.  To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004).  The filing of a grievance against prison officials is constitutionally protected conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003).  The Second Circuit defines, "'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346 (2d Cir.

11

2003)) (emphasis in original).  "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Gill*, 389 F.3d at 381.

In the amended complaint, plaintiff claims:

> Plaintiff and the other prisoners told Officer Krentz that they didn't think it was safe for them to be in this area without proper cleaning and safety gear and equipment.
>
> Officer Krentz then told plaintiff and the other prisoners to stay where they were at so that he could relay this complaint to the sergeant.
>
> Officer Krentz then came back to plaintiff and the other prisoners fifteen minutes later and said to plaintiff and the other prisoners, if they didn't clean the area, that they would all be given an infraction for violating prison rules.
>
> So, plaintiff did what he was told, because he had no other choice.
>
> Plaintiff and other prisoners were forced and threatened to clean this area on both days, December 1, 2006 and December 4, 2006.

Amended Complaint at ¶15-18, 22.

After the area was allegedly deemed unsafe, plaintiff further claims:

> Prison officials then immediately took plaintiff and other prisoners off this assignment.  At this time, plaintiff knew there was a problem, so plaintiff filed a grievance with the facility, along with a request for medical treatment.  All of this occurred that same day, December 5, 2006.
>
> Plaintiff wasn't seen by medical unit until one week after the request and at that point plaintiff was treated with total disrespect because plaintiff had filed a grievance.

*Id*. at ¶ 27-28.

As a third cause of action, plaintiff asserts:

> Plaintiff was denied his First Amendment rights to petition Prison

12

> Officials concerning the filing of a grievance with respect to having to work in a dangerous area of the prison.
>
> Specifically, Officer Krentz told plaintiff and other prisoners after they raised concerns that if plaintiff and other prisoners didn't clean the area, plaintiff would be given an infraction.
>
> If plaintiff received an infraction, plaintiff would be removed from the Chemical Dependency Program that plaintiff was enrolled in at the prison.
>
> Plaintiff proceeded ahead with the cleaning of the prison area under duress and in direction violation of his rights to be free from unsafe conditions threatening his health.
>
> Plaintiff is entitled to file a grievance concerning dangerous working conditions without being punished for filing said grievance.

*Id*. at ¶ 49, 51-52, 54.

Construing the amended complaint liberally, plaintiff alleges two retaliatory acts: (1) defendants forced him to clean the subject area after he verbally complained about the conditions; and (2) medical treatment was delayed and "disrespected" due to the filing of a grievance.

Defendants argue that plaintiff has not sufficiently plead a First Amendment retaliation claim as he asserted only conclusory allegations that he would have been removed from his drug program and therefore, did not establish an "adverse action".[6]  Defendants claim that plaintiff, "sets forth no facts as to why he couldn't have refused to work, received the disciplinary ticket and explained the basis for his refusal to work". Defendants misstate plaintiff's burden at this stage of the litigation. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

---

[6] Defendants present no argument regarding the causal connection between the alleged adverse action and the alleged protect conduct.

13

Examining the amended complaint in a light most favorable to plaintiff, the Court concludes that plaintiff has stated a cause of action for retaliation with respect to the delay in receiving medical treatment. Plaintiff claims that he filed a grievance regarding the incident on December 5, 2006.[7] As the filing of a grievance is a constitutionally protected activity, plaintiff has satisfied this prong of the retaliation analysis. Moreover, plaintiff alleges that as a result of the delay and quality of medical treatment, he suffered physical injuries. As plead, plaintiff has sufficiently asserted an "adverse action" to overcome his burden on a motion to dismiss.

Plaintiff also alleges that on December 1, 2006, he verbally complained about the dangerous conditions to Krentz and that Krentz relayed this complaint to the 7-3 Sgt. Plaintiff alleges that after he complained to Krentz, he was forced to clean the area and then forced to return to the area three days later to clean it again. As a result of cleaning the area, plaintiff claims that his health has been affected. Amended Complaint at ¶ 41. Construed liberally, plaintiff asserts that defendants forced him to clean the area in retaliation for verbally complaining about the working conditions.

Defendants do not argue that plaintiff's verbal complaints are not constitutionally protected activity. Even assuming defendants presented such an argument, courts in this district have held that, in some instances, oral complaints to a corrections officer may be protected by the First Amendment. *See Smith v. Woods*, 2006 WL 1133247, at *10 (N.D.N.Y. 2006) (citations omitted). Plaintiff's amended complaint provides sufficient details of the events surrounding the incidents on December 1, 2006 and December 4, 2006. Plaintiff has adequately articulated the substance of his verbal complaints, the identity of the person to whom he complained and the date

---

[7] Plaintiff's Inmate Grievance Complaint, annexed to plaintiff's original complaint as Exhibit "A", is dated December 8, 2006.

14

of said complaints. *See Varela v. Demmon*, 491 F.Supp.2d 442, 451 (S.D.N.Y. 2007) (the plaintiff's allegation that he was assaulted by prison staff because he verbally complained to a sergeant were sufficient to provide a basis for a retaliation claim). As previously noted, the Court finds that plaintiff also adequately plead the existence of an adverse action. Plaintiff claims that he was forced to work in dangerous conditions causing him to suffer injuries. Plaintiff has plead enough to state a plausible claim for retaliation. Consequently, defendants' motion to dismiss plaintiff's First Amendment cause of action is DENIED.

## F.     **Qualified Immunity**

Defendants claim that they are entitled to qualified immunity. Public officials enjoy qualified immunity from liability under § 1983 "so long as their conduct does not violate a clearly established statutory or constitutional right." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). The Second Circuit has held that "[a] right is clearly established if: (1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.' " *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).

In determining whether qualified immunity applies, the Court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. ----, 129 S.Ct. 808, 818 (2009) (holding that although "the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory"). If the plaintiff establishes that the violation of a constitutional right occurred, the court can examine "whether the right was clearly established ...

in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*.

Defendants present a vague argument in support of qualified immunity contending that they could not, "foresee that two days of [a work assignment] was a violation of plaintiff's constitutional rights, nor are any or the named defendants alleged to have had knowledge that the area in question was a risk to the plaintiff's health." While defendants address plaintiff's Eighth Amendment claims in this context, the motion is silent with respect to plaintiff's retaliation claims. Based upon the Court's decisions in Sections IIB and IIE, and having carefully considered the present record, the Court is not well-positioned at this early stage to dismiss plaintiff's claims on the basis of qualified immunity. The Court finds that "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F.Supp.2d 659, 666 (S.D.N.Y. 2004).

**G.     Eleventh Amendment**

In the prior Report and Recommendation, Magistrate Judge Lowe stated:

> . . . the New York State Department of Correctional Services is an arm of the state and therefore immune. Accordingly, the Court recommends that the claims against the Department of Correctional Services be dismissed without leave to amend.

Report and Recommendation, at p. 15.

In the caption of the amended complaint, plaintiff names the "Department of Correctional Services" as a defendant. Based upon this Court's prior Order adopting the Report-Recommendation, plaintiff may not assert claims against the DOCS as a defendant. Accordingly,

16

defendants' motion to dismiss all claims against the DOCS is GRANTED.

**H.     Request for Protective Order**

Defendants request a stay of discovery in this action pending the issuance of a decision with regard to their motion to dismiss, pursuant to Fed. R. Civ. P. 26(c). The Court denies this request as moot. If defendants seek an order staying discovery of this matter, for any reason, defendants are directed to properly file a Notice of Motion seeking such relief. *See Paterson v. Goord*, 2008 WL 623123, at *11, n. 38 (N.D.N.Y. 2008) (the defendant should not attach such a request to the end of a motion for different relief).

## CONCLUSION

**It is therefore**

**ORDERED** that defendants' motion to dismiss (Dkt. No. 48) plaintiff's Fourteenth Amendment claims is GRANTED; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 48) plaintiff's claims against the Department of Corrections is GRANTED; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 48) plaintiff's complaint is otherwise denied; and it is further

**ORDERED** that defendants' motion for a protective order (Dkt. No. 48) is denied.

**IT IS SO ORDERED.**

Date:   March 28, 2011

Norman A. Mordue
Chief United States District Court Judge

17